**STATE ex CLARK, Relatrix, v. ALLAMAN et, Respondents.**

Ohio Appeals, Second District, Montgomery County.

No. 2082.   Decided January 20, 1950.

A. W. Schulman, Dayton, for relatrix.
Mathias H. Heck, Pros. Atty., Herbert M. Jacobson, Asst. Pros. Atty., Dayton, for respondents.

## OPINION

By HORNBECK, J.

This is an original action in habeas corpus instituted by Betty Clark to have restored to her the custody of her child which is now in the custody of the respondent, Allaman, Superintendent, under order of the Juvenile Court of Montgomery County, Ohio.

The matter is submitted to this court on an agreed and a supplemental statement of facts which show that the child in question was born out of wedlock on the 27th day of March, 1949; that the father of said child is unknown; that after the birth of the child the mother, Betty Clark, the relatrix herein, and said child resided in the home of Mr.

and Mrs. Arthur Brendel, Dayton, Ohio; that on April 21, 1949 the Brendels filed a petition for adoption of said child in the Probate Court of Montgomery County, Ohio; that the mother gave her consent in writing to said adoption; that on August 12, 1949 a hearing was held in the Probate Court on the petition for adoption and at that time the Brendels, through their counsel, withdrew their petition for adoption and thereupon the court made the following order, which was journalized:

"The court finds that the petitioners herein desire to withdraw their petition for this adoption.

"THEREFORE, it is hereby ordered that said petition be withdrawn and that this cause be dismissed. It is further ordered that this cause be certified to the Montgomery County Juvenile Court for appropriate action and disposition as provided by §10512-21 GC."

The facts further show that certification was made to the Juvenile Court of Montgomery County, Ohio.

On August 18, 1949 a preliminary hearing was held in the Juvenile Court and on said date the court ordered said child removed from the home of the Brendels and placed in a licensed foster home. On September 12, 1949 a second hearing was held in the Juvenile Court, at which time the court found that the child was a dependent child and that it would be for the best interests of the child that the mother be deprived of its custody temporarily. "That by journal entry, the temporary care and custody of said child was given to the Catholic Charities of Dayton, Ohio, and said child at the request of the Catholic Charities is now in the control of Richard Allaman, Superintendent of the Montgomery County Detention Home," a respondent herein. "That all of said proceedings in the Juvenile Court was taken over the protest and without the consent of the relatrix." "No charge as against the relatrix concerning the dependency of said child has been made in the Juvenile Court and that the Juvenile Court assumed jurisdiction over said child solely by virtue of the order of the Probate Court * * * certifying said cause under the provisions of §10512-21 GC."

There are certain salient facts that should be noted at the outset of this case.

The respondents rely entirely upon the proposition that the Juvenile Court had jurisdiction to commit the child for dependency on the certification of the Probate Court.

The Probate Judge made no interlocutory order of adoption, or otherwise, affecting the custody of the child.

The custody and right of custody was at all times prior to certification in the mother, the relatrix.

There were two hearings respecting the child. The first on August 18, 1949, the second on September 12, 1949. The commitment complained of was made at the second hearing. At no time was there any complaint filed charging the child to be a dependent child or any other form of complaint originating in the Juvenile Court.

The respondent holds the child upon a commitment predicated on an adjudication "That said child is a dependent child" and for that reason it is for the best interests of said child that its parent be deprived of its custody temporarily. The temporary aspect of the order does not affect the question presented because the adjudication of dependency has been made which, if proper, will support permanent as well as temporary commitment.

The court will modify its temporary order only upon change of circumstances as to which, if the application be made by the mother, the burden will be upon her. Upon a charge of dependency, the burden is upon the state.

Did the Juvenile Court have jurisdiction to make the order upon which the commitment to respondents rests? We think not, for two reasons.

The first is that there was no proper basis for the certification from the Probate Court to the Juvenile Court under §10512-21 GC which, insofar as applicable provides, "If for any reason the **petition** shall be dismissed * * *, the following disposition shall be made of the child: (a) * * *. (b) Otherwise the **cause** shall be certified to the juvenile court * * *." (Emphasis ours.) The entry reads:

"The court finds that the petitioners herein desire to withdraw their petition for this adoption.

"Therefore, it is hereby ordered that said petition be withdrawn and that this cause be dismissed. * * *."

The petition was not dismissed but it was withdrawn by the petitioners. The court did not act on the petition and at the time of the certification there was nothing pending and no "cause" upon which the certification could be based.

In the position we take, we are not relying on the technical difference between "withdrawal" and "dismissal" and realize that they may be used synonymously and that under certain

situations a party has the right to dismiss a cause of action.

It is probable upon consideration of the adoption code that the dismissal of the petition mentioned in §10512-21(b) GC is intended to be made by the court after some adjudication on the adoption proceedings. Secs. 10512-18 and 10512-20 GC each provides for a full hearing and defines the orders that may be made at its conclusion. Sec. 10512-21 GC which follows immediately should be read in the light of the preceding sections.

The petition for adoption which is brought onto the record by a supplemental stipulation of facts recites that "Said child is living in the home of the petitioners" (which was also the home of the mother) "and is in the permanent custody of Betty Marie Clark, natural mother and sole parent of the child sought to be adopted, etc."

The withdrawal of the petition was in effect the same as if done the day after it was filed. What reason was there for a certification to the Juvenile Court? Two of the best citizens of Dayton decide to begin adoption proceedings involving a child of one of them and the parent files consent, but before any order is made respecting the adoption these parties for reasons satisfactory to themselves decide to withdraw all proceedings, to which the court consents. Is it contemplated by the adoption statutes that in such situation the child must first be certified into Juvenile Court, a hearing had affecting its custody and an adjudication made thereon before the parent may have the custody of his own child? We do not believe that certification is contemplated or proper in such situation.

Our second reason, and of more consequence than the first, assumes the regularity and validity of the certification from the Probate Court to the Juvenile Court.

The commitment is grounded upon an adjudication that the minor is a dependent child. If that is made without jurisdiction the commitment is void. The findings as to the best interest of the child is not an independent but a dependent conclusion based upon the primary and essential adjudication of the dependency. The Juvenile Court did not have jurisdiction to determine that the minor was a dependent child because its jurisdiction was not properly invoked to make such an adjudication.

The statute under which the certification was made says that if the petition be dismissed "the cause shall be certified to the Juvenile Court for appropriate action and disposition by such court."

What then was appropriate action of the Juvenile Court as to which disposition should be made?.

The jurisdiction of the Juvenile Court is not fixed, defined, or enlarged by this certification statute but is conferred by the Juvenile Court Act. **Sec. 1639-16(d) GC** provides that "The court shall have jurisdiction to hear and determine the case of any child duly certified to the court according to law by any court of competent jurisdiction, and to make **disposition of said child in accordance with the provisions of this chapter**." (Emphasis ours.)

The chapter referred to is the Juvenile Court Act. In the act are defined delinquent child, neglected child, dependent child and crippled or otherwise physically handicapped child and the court is given exclusive jurisdiction concerning such children.

It is stipulated that the court assumed jurisdiction over the child solely by virtue of the certification from the Probate Court and without any complaint charging that it was a dependent child.

**Sec. 1639-23 GC** provides that jurisdiction of the court shall be invoked by the filing of a sworn complaint that the child is dependent, etc. **Sec. 1639-24 GC** requires that a citation shall be given to parents, reciting the substance of the complaint, etc. The citation which was issued must have been based on the certification. No citation in compliance with this section could have been made upon the relatrix for the obvious reason that no complaint had been filed. This section further provides that **after such citation** if it appears "that the child is in such conditions or surroundings that his welfare requires that his custody be immediately assumed by the court," the court may order that the child be taken into custody at once. Apparently the custody was assumed by the court on the first hearing but no complaint had then, or later, been filed.

It should be noted that the record shows no order of the Probate Court in the adoption proceedings, §10512-18 **GC**, affecting the custody of the child and though it had been living with those who sought to adopt it, as was its mother, this did not affect the right of the mother to its custody until some such order had been made or until the state, by some appropriate proceeding had intervened. **Rarey v. Schmidt, 115 Oh St 518.** No such proceeding was followed but the court without complaint filed, and over the protestations of the mother conducted a hearing, adjudicated the infant to be a dependent child and awarded custody to another than the parent. This procedure is not

contemplated in any situation wherein the dependency of a child is to be adjudicated.

We recognize that the acts of minors, or their parents, defined in the Juvenile Court Act and of which the judges of that court are given jurisdiction are not to be classified as criminal but they are so related as that there is analogy between the procedure in both classes of cases.

"The Juvenile Court has just such jurisdiction as is conferred upon it by statute." **24 O. Jur. 561.**

They are "courts of special jurisdiction over delinquent and neglected children, their jurisdiction being limited by the terms of the constitutional or statutory provisions under which they are created." 43 C. J. S., Infants, §6 p. 53. "And" (their) "jurisdiction must be strictly construed, and cannot be enlarged by a provision in the statute requiring the statute to be liberally construed, so that its purposes may be carried out." 43 C. J. S., Infants, §6, p. 54.

Jurisdiction must be determined from the charge against a defendant and until it is lodged with the court it has no jurisdiction of the person or the subject matter. 14 Am. Jur. 918; 22 C. J. S., Criminal Law, §143, p. 235. Jurisdiction of parties may be determined by consent but jurisdiction of the subject matter is always fixed by law. **12 O. Jur. 103.** Jurisdiction of one charged with an offense before courts of limited jurisdiction can be acquired only by filing an affidavit or requisite complaint. **12 O. Jur. 102.** In an annotation to Sinquefield v. Valentine, 76 A. L. R. 247, it is concluded: "It has been uniformly held in cases based on statute and principle, that a parent cannot be deprived of the custody of a child in a commitment proceedings without notice and an opportunity to be heard."

Citing authorities from fifteen states, including Ohio.

That a complaint is a prerequisite to the jurisdiction of the Juvenile Court to adjudge a minor to be a dependent child is decided, inferentially, at least, in Rarey v. Schmidt, supra, 2nd syllabus. It holds that, with certain exceptions, not applicable here, a parent whose residence is known must be served with a citation of the pendency of the complaint before the Juvenile Court has jurisdiction to declare a child of the parent to be dependent. **115 Oh St 518.** At page 521 of the opinion, Judge Robinson says: "While the section (§1648 GC) as a whole is inartfully drawn, it quite definitely appears that before the jurisdiction of the court to deal with the child attaches one of three classes of persons—the parent, the guardian, or the person having custody of the child—

shall have legal notice of the pendency of the complaint."

See also **Ex parte Province, 127 Oh St 333, Lewis v. Reed, 117 Oh St 152, In re Corey, 145 Oh St 413, In re Hobson, 43 Abs 216, 44 Abs 85, 86, 92.**

The filing of a complaint charging the dependency of the child was the sine qua non to the jurisdiction of the Juvenile Court to adjudicate as to such dependency. Without such complaint and notice to the mother of the charge therein set forth she was denied her basic right to defend against the claim.

There is at least one other section of the Code, §1639-29 GC, providing for certification of certain criminal cases to the Juvenile Court. This section provides analogy to and requires differentiation from §10512-21 (b) GC. But where certification is made in criminal cases there has been already filed a complaint setting out in due form a charge of an offense and the statute provides that after certification the Juvenile Court shall thenceforth have exclusive jurisdiction which "shall be deemed to be upon a complaint filed in such court as fully as if the appearance of such child had been upon a complaint filed in and a citation or warrant of arrest originallly issued out of and by such court."

When citation is made under this section all jurisdictional steps have been taken in the originating court. This is also true as to cases certified under §8034-1 and the paragraph (c) of §1639-16 GC. In the instant case no claim was, or could have been, made in the adoption proceedings that the child was a dependent child.

It is true that in **State ex rel. Sparto et al. v. Williams, 55 Abs 341, (86 Oh Ap 377,** affirmed in **153 Oh St 64)** 86 N. E. 2d 501, 502, we said that certain jurisdiction was conferred upon the Juvenile Court to determine custody of a child by the certification made by the Probate Court in adoption proceedings. We said too much and a close reading of the section authorizing the certification is convincing that it does not ex vi termini confer the jurisdiction exercised here. Nor was the language just adverted to necessary to the adjudication because admittedly, when the court acted, it had before it an affidavit in which it was charged that the minor was a neglected child.

We do not discuss **Paddock v. Ripley, 149 Oh St 539, 80** N. E. 2d 129, because, if the syllabus is given full effect, it does not reach our question. Here there is a purported finding that the infant is a dependent child, which was not found in the cited case. The invalidity of the judgment, we consider, is further back in the proceedings in that there is no

foundation upon which the adjudication can rest. We do not agree that the syllabus of Paddock v. Ripley is but a reiteration of obiter dictum in the opinion. It responds to a vital issue urged and litigated in the Supreme Court.

The Juvenile Court being without jurisdiction to make the finding and adjudication that the minor was a dependent child, the custodial order predicated on such judgment by which the child is now held is ineffective. The writ will be allowed, as prayed.

MILLER, PJ, concurs in judgment.
WISEMAN, J, dissents.

WISEMAN, J. (dissenting).

I regret that I cannot concur with the conclusion of the majority of this court. This dissenting opinion, which is of some length, is written in the belief that a statement as to the other view of the law applicable to the issues presented may be helpful.

The sole question for determination is whether the Juvenile Court had jurisdiction to determine the question of custody of the child. If the Juvenile Court had jurisdiction habeas corpus does not lie.

I cannot agree with the majority that there was no proper basis for the certification of the cause to the Juvenile Court under §10512-21 GC. What was the legal effect of the withdrawal of the petition and the dismissal of the action for adoption? **Sec. 11586 GC**, controls the disposition of an action after it is instituted. This section in part provides:

"An action may be dismissed without prejudice to a future action:
"1. By the plaintiff, before its final submission to the jury, or to the court, when the trial is by the court;"

The Code of Civil Procedure makes no provision for voluntary withdrawal of an action by the plaintiff. Under the Code the legal effect of a voluntary withdrawal of an action is a voluntary dismissal of the action. **Siegfried v. New York, L. E. & W. R. Co., 50 Oh St 294, 297**, 34 N. E. 331.

We recognize the general rule that when an action is dismissed the court is without jurisdiction to make any further order. **Schaffer v. Schaffer, 114 Oh St 309**, 151 N. E. 186. However, the general rule is subject to the power of the legislature to confer jurisdiction on the court to act after dismissal of the action. Certainly the legislature has the power to grant authority to the court dismissing the action

to certify such cause to another court. In the instant case the Probate Court had authority after the dismissal of the petition for adoption to certify the cause to the Juvenile Court under §10512-21 GC.

In the majority opinion the point is made that there was no cause pending upon which the certification could be based. Under §10512-21 GC, it is not intended that a pending matter be certified to the Juvenile Court. The certification of the record in the Probate Court, when filed in the Juvenile Court, effectually opens up a custody case in the Juvenile Court. However, the record in the Probate Court does show on its face that the question of the custody of the child was not determined. The situation presented is this: The record, on its face, shows that there was an illegal placement of the child in the home of the petitioners. The record fails to show a compliance with the provisions of §1352-13 GC. The mother had given her consent in writing to the adoption. For some reason the adoption proceedings were dismissed and the child continued to reside in the home of the petitioners, who obviously were not the parents of the child. The Probate Court did not have jurisdiction to determine the question of custody of the child; the question of custody had to be determined by a court of competent jurisdiction. In the opinion of the Probate and Juvenile judges of this state the situation which is presented here occurred so often and was of such seriousness that legislation providing for a procedure certifying the cause to the Juvenile Court and conferring jurisdiction on the Juvenile Court to hear and determine the matter of custody was proposed and enacted. See 1947 Supplement to Addams and Hosford, Ohio Probate Practice and Procedure, page 214.

It is immaterial whether the adoption proceedings is dismissed before or after a hearing on the merits. The provisions of §10512-21 GC, are sufficiently comprehensive to embrace actions dismissed before a hearing as well as after a hearing has been had.

In the majority opinion it is stated that the custody of the child was at all times prior to certification in the mother and that there was no reason for the certification under the facts stated. While it is true permanent custody was in the mother, the child resided in the home of the Brendels with whom it was placed by the mother for adoption. Residence of the child in the home of the petitioners is required, otherwise the petitioners cannot proceed with the adoption. See §§10512-11, 10512-12 and 10512-18 GC. It will be observed that under the first order of the Juvenile Court the child was removed from

the Brendel home and placed in a licensed boarding home. The record does not show where the mother resided at the time the case was certified to the Juvenile Court. The majority opinion infers that certification may be proper in certain cases and under certain conditions and not proper in other cases. There are no exceptions in §10512-21 GC, and its provisions are mandatory.

The majority opinion states that, assuming the legality and validity of the certification from the Probate Court the commitment by the Juvenile Court was grounded upon an adjudication that the minor was a dependent child and that the Juvenile Court was without jurisdiction to make said order. The point is made that before a minor can be found to be a dependent child, a complaint of dependency must first be filed. With this abstract principle, I agree. However, the proceeding instituted in the Juvenile Court was not a · dependency proceeding. The recital in the order of commitment that the child was dependent did not convert the proceeding into a dependency proceeding and the record need not show a compliance with the legal requirements of a dependency proceeding. The child cannot be said to be a dependent child within the meaning of the Juvenile Court Code. The order of the Juvenile Court, in depriving the mother of the custody of her child, is not given validity by reason of the recital in the order that the minor was a dependent child. This statement neither adds to nor detracts from the legal effect of the order which, in my opinion, was a valid order based upon other grounds.

Did the Juvenile Court have jurisdiction to make the order? The jurisdiction to determine the question of custody of a child in a matter certified under §10512-21 GC is clearly conferred on the Juvenile Court under §1639-16 GC, paragraph (d), which provides: "The court shall have jurisdiction to hear and determine the case of any child duly certified to the court according to law by any court of competent jurisdiction, etc."

This provision was proposed by the Probate and Juvenile judges of the state and enacted by the legislature for the purpose of conferring jurisdiction on the Juvenile Court to determine the custody of a child after the matter had been certified by a court of competent jurisdiction. It was meant to cover a situation such as is presented in the instant case. Unquestionably the legislature has the power to confer jurisdiction on the Juvenile Court in a custody case which is instituted by the filing of a certification from the Probate Court when a petition for adoption is dismissed as provided

in §10512-21 GC. The moment the certification of the record is filed in the Juvenile Court, that court is immediately aware that it has a custody case before it. Upon a certification duly made by the Probate Court what further jurisdictional step was required to authorize the Juvenile Court to hear and determine the question of custody? Jurisdiction having already been acquired under **paragraph (d)** of §1639-16 GC, no further jurisdictional step was required. Furthermore, the legislature did not provide that any other jurisdictional step should be taken. After service of citation on the mother the court had the authority to proceed and determine the issue.

**Paragraph (d)** of §1639-16 GC, confers jurisdiction on the Juvenile, Court to hear and determine the case of any child certified to it and "to make disposition of said child in accordance with the provisions of this chapter." This last provision does not refer to the jurisdiction of the court, but rather to the procedure to be followed in the exercise of the jurisdiction conferred. We need not look beyond the provisions of §1639-16 GC, to find complete authority to determine the question of custody. The applicable part of that section is as follows:

"(a) The court shall have exclusive original jurisdiction under this chapter or under other provisions of the General Code: * * *

"2. To determine the custody of any child not a ward of another court."

The power to hear and determine the question of custody of a child includes the power to deprive one person of the custody and award it to another. The best interests of the child must always be the guide to be used by the Juvenile Court in determining questions of custody. In the instant case the Juvenile Court made a finding that it was for the best interests of the child that the mother be deprived of its custody, temporarily. In making the order the court used a blank form which required certain inapplicable provisions to be stricken; some inapplicable provisions were not stricken. While the order is not artfully drawn, it is nevertheless a valid order.

In the majority opinion great stress is laid on the fact that the court found the minor to be dependent. However, these words could have been omitted without affecting the validity of the order. When the court found that it was for the best interests of the child that its parent be deprived of its care and custody, temporarily, the court had made an

order which was legally sufficient and valid. This was the determinative and controlling finding on the issue presented. The reason assigned by the court for the finding and order is immaterial. **Vol. 23 O. Jur. p. 817.** The court may have assigned any one of a number of reasons for its finding, to wit: That the child was neglected, delinquent, crippled or otherwise physically handicapped, that the mother was incompetent or any other good and valid reason. A "dependent child" is defined in §1639-4 GC, which provides that a dependent child includes any child who is homeless or destitute or without proper care or support, through no fault of its parents; who lacks proper care or support by reason of the mental or physical condition of its parents; or whose condition or environment is such as to warrant the state, in the interest of the child, to assume its guardianship. Let us assume that the evidence presented to the Juvenile Court in the instant case would have justified a finding that the child lacked proper care or support by reason of the mental or physical condition of its parents, could it be successfully contended that such recital in the order of the court would vitiate the whole proceeding, oust the jurisdiction of the court, and render null and void an otherwise valid judgment? The only order which the Juvenile Court could make in the instant case was whether the best interest of the child required the court to deprive the mother of its care and custody. The court made this finding and incorporated it in its order. The judgment of the court can be sustained on this ground. A judgment of a court having jurisdiction of the subject matter and the parties is not null and void by reason of the fact that the court which rendered it based it on erroneous grounds, if it can be supported on some valid ground. **Vol. 23 O. Jur. pp. 814, 816** (cases cited).

Assuming the Juvenile Court had jurisdiction and conceding that in the exercise of such jurisdiction the Juvenile Court made an unwarranted or erroneous order, which I do not concede, the jurisdiction of the court would not be ousted and such error could be taken advantage of only on appeal. Habeas corpus would not lie. **In re Burson, 152 Oh St 375, 383.**

The relatrix cites the case of **Paddock v. Ripley, 149 Oh St 539, 80 N. E. 2d 129,** in support of the contention that the Juvenile Court lacks jurisdiction to proceed to determine the custody of the child or make any order, temporary or permanent, until and unless an affidavit is filed charging the child to be a delinquent, neglected, or dependent child. The statement in the Paddock case, which appears in the opinion

of the court **149 Oh St** on **page 541,** 80 N. E. 2d on page 131 that "Under the Juvenile Court Code, such courts have jurisdiction only of delinquent, neglected or dependent children", is purely obiter dictum. In so holding did the Supreme Court intend to exclude from the jurisdiction of the Juvenile Court hearings in all matters involving children other than delinquent, neglected, or dependent children? We do not think so. While it is true the Supreme Court, in its opinion did refer to §1639-16 GC, which is the general section conferring jurisdiction on the Juvenile Court, it mentioned only delinquent, neglected or dependent children. It failed to take into consideration that under §1639-16 GC, jurisdiction is also conferred respecting crippled or otherwise physically handicapped children: also, "to determine the custody of any child not a ward of another court," and "to determine the paternity of any child alleged to have been born out of wedlock." If the Juvenile Court has jurisdiction only over delinquent, neglected or dependent children, then the Juvenile Court may not exercise jurisdiction over children in matters in which jurisdiction is conferred specifically by other sections of the code. Reference is made to §§1352-8, 1639-29, 8034-1, 11181-1 and 10512-16 GC.

The factual situation presented in the case at bar was not presented to the Supreme Court in the Paddock case. In that case the Juvenile Court had not intervened by making an order respecting the custody of the child; the jurisdiction of the Juvenile Court was not directly involved. Since the announcement of the opinion in the Paddock case the Juvenile Courts of this state have continued to exercise jurisdiction, and rightly so, in many matters involving children who are neither delinquent, neglected or dependent. If a complaint charging a child to be delinquent, neglected or dependent is a prerequisite to the exercise of jurisdiction by the Juvenile Court in such cases, then the provisions for certification under §10512-21 GC, and paragraph (d) of §1639-16 GC, are meaningless for the reason that such complaint in the proper case could have been filed before the enactment of these provisions. It was to avoid the necessity of filing such complaints in the proper cases, and the impropriety of doing so in others, in case the adoption was not granted, that these provisions were enacted. It is a source of satisfaction to know that not all children sought to be adopted are delinquent, neglected or dependent. Such complaints could not be properly filed in all cases where adoption petitions are dismissed. The legislature recognized this situation in the enactment of §10512-21 GC, and paragraph (d) of §1639-16 GC.

In my opinion jurisdiction is clearly conferred on the Juvenile Court to determine the custody of the child in question and the filing of a complaint charging the child to be a delinquent, neglected or dependent child was not a necessary prerequisite to the exercise of such jurisdiction.