ROBERT O...., MATTER OF.

Juvenile Court, Cuyahoga County.

No. 211766.   Decided January 31, 1964.

WHITLATCH, J. This matter comes before this Court as the culmination of two previous court actions involving Robert O...., a child about 2 years of age. The mother of Robert originally filed a bastardy action against one Robert H...., which action was dismissed by the mother and her counsel after reaching an agreement with the alleged father of the child. The agreement provided that the alleged father would pay the mother $4,500.00 and that the mother would place the child, Robert O...., for adoption.

Accordingly, the mother filed an application with the Probate Court of Cuyahoga County, pursuant to Section 5103.16, Revised Code, to place her child for adoption with Mr. and Mrs. McL..... The Probate Court approved the McL.... home, the child was placed therein on July 23, 1963, and the alleged father paid the mother the $4,500.00.

On August 17, 1963, the mother married a Samuel R.... and when she showed anxiety about having given up her child her husband suggested that she request the return of the child.

The adoption petition was filed on September 5, 1963, and when the matter came on for hearing in the Probate Court on

November 18, 1963, the mother withdrew her consent. Whereupon the Probate Court dismissed the petition and, pursuant to Section 3107.12, Revised Code, certified the case to the Juvenile Court for "appropriate action and disposition."

The McLs.... then filed a neglect complaint in the Juvenile Court alleging that the mother, Shirley R...., "neglects or refuses to provide the said child with proper care necessary for his health, morals or well being."

The Juvenile Court in making disposition of Robert O.... is immediately confronted with two jurisdictional questions:— (1) Did the Court derive jurisdiction of this child by the certification from Probate Court? and (2) Is this child a "neglected child" as alleged in the petition?

Section 2151.23 (D) Revised Code, provides as follows:—

"Such court [the Juvenile Court] has jurisdiction to hear and determine the case of any child certified to the court by any court of competent jurisdiction, and to make disposition of said child in accordance with Sections 2151.01 to 2151.54, inclusive, Revised Code."

From reading this section it might appear that certification of this child from the Probate Court to the Juvenile Court under Section 3107.12, Revised Code, would of itself give the Juvenile Court "the jurisdiction to hear and determine" this case. However, the Supreme Court of Ohio in *State, ex rel. Clark,* v. *Allaman,* 154 Ohio St., 296, 95 N. E. (2d), 753, 43 Ohio Opinions, 190, has held to the contrary. This case holds that the purpose of Section 10512-21, General Code (now Section 3107.12, Revised Code), is to provide a method whereby the Juvenile Court is required to make investigation to determine who has the responsibility for the care of the child and, if the investigation reveals facts sufficient to warrant invoking of the jurisdiction of the Juvenile Court for appropriate action and disposition by such Court such jurisdiction can be grounded on the procedures established in Section 1639-23, General Code [now Section 2151.27, Revised Code].

Thus Section 2151.23 (D), Revised Code, authorizing "the Juvenile Court to make disposition of said child *in accordance with Sections 2151.01 to 2151.54,* inclusive of the Revised Code" requires compliance with all the jurisdictional and procedural

statutes governing the Court including Section 2151.27, Revised Code, which provides for the filing of a sworn complaint. (Emphasis added.)

In expressing the unanimous opinion of the Court in *Clark* v. *Allaman, supra,* Judge Faught stated the rule as follows:—

"There is no language in Section 10512-21, General Code, [now Section 3107.12, Revised Code], which indicates that a certification of the cause is to be considered a complaint. The last sentence therein provides that "otherwise the cause shall be certified to the Juvenile Court * * * for appropriate action and disposition by such court." Necessarily, that language includes by implication all the other jurisdictional and procedural statutes governing that court, including Section 1639-23 General Code, [now Section 2151.27, Revised Code], supra. To hold otherwise would give the Juvenile Court unlimited authority in such certified cases. There is nothing in Section 10512-21, General Code, [now Section 3107.12, Revised Code], authorizing such conclusion."

Clearly then the certification from the Probate Court, of itself, did not give the Juvenile Court the jurisdiction to determine the custody of Robert O.....

It is worth noting that the Appellate Decision in the *Clark* v. *Allaman case,* 87 Ohio App., 101, 90 N. E. (2d), 394, 42 Ohio Opinions, 330, distinguishes the effect of certification to the Juvenile Court under Section 1639-29, General Code (now Section 2151.25, Revised Code), providing for the certification of delinquency cases from adult Courts, and Section 8034-1, General Code (now Section 3109.06, Revised Code), providing for the certification of cases from Common Pleas Court, from certification under Section 3107.12, Revised Code, wherein an adoption case is denied or dismissed; the Court points out that where certification is had in delinquency cases and in custody and support cases, jurisdiction has attached in the certifying Court whereas in the adoption case the matter of the child's custody has not been put in issue. Merrick-Rippner Probate Law, Text Page 200.

In the instant case we have a sworn complaint as required by Section 2151.27, Revised Code, wherein it is alleged that Robert O.... is a neglected child in that the mother "neglects or refuses to provide him with proper care necessary for his

health, morals or well being." Specifically, this complaint is brought under Section 2151.03 (C), Revised Code.

Is Robert O.... a neglected child as charged in the complaint? The evidence shows that the mother gave the child good care while he was with her prior to his placement with the McLs..... Up to this point he had developed well both physically and psychologically. The mother in placing Robert O.... with the McLs.... completely complied with the law in respect to the approval of the prospective adoptive home prior to the placement of Robert O.... therein. The evidence further showed that the McLs.... gave the child good care while he was in their home. Therefore, it must be said that the mother provided good care for the child while he was with her and also by way of her planning for him in the approved prospective adoptive home; in neither instance did she "neglect or refuse" to provide proper care.

Can it be successfully argued that the mother's initially giving up her child for the purpose of adoption would constitute such rejection of the child as to warrant a finding that Robert O.... is a neglected child? We think not. The placement was made strictly in accordance with the statutes. The evidence shows that the placement was prompted by considerations other than the mother's desire to be relieved of the child's care. The reports of the Social workers in both the Juvenile Court and the Probate Court show that the mother's family had reacted most unsympathetically to the birth of the illegitimate child because of the "disgrace" that the mother had brought upon them. There is also a suggestion that the mother was strongly persuaded that the adoptive placement brought about by the cash settlement would enhance the prospects of a successful marriage to Samuel R..... Under these circumstances one can understand how the mother could arrive at the decision that it was in the "best interests" of her child to place him for adoption. Her inability to abide by her decision after her husband's assurance that he would adopt the child and accept him as his own is also understandable. We must conclude that Robert O.... is not a neglected child as alleged and the complaint is therefore dismissed.

The McLs.... have had the child for only a few months. Fortunately, they were informed by the Probate Court that

under the law (Section 3107.06, Revised Code), the mother could withdraw her consent and they were, therefore, somewhat prepared when the mother elected to do so. However, it is most regrettable that this couple should have been subjected to this trying experience. Perhaps there is much to recommend a statutory provision to prevent the parent from withdrawing the consent in such cases as this where the Court has approved the placement pursuant to Section 5183.16, Revised Code. Such finality is recognized where a parent makes a voluntary permanent surrender to a certified children's agency under Section 5103.15, Revised Code. (*Kozak* v. *The Lutheran Children's Aid Society*, 164 Ohio St., 335, 58 Ohio Opinions, 125, 130 N. E. [2d], 796.)

By her care of Robert O.... prior to placement the mother has demonstrated that she is capable of giving the child good care. Her husband is a stable person, regularly employed, who has expressed his willingness to adopt Robert O..... Therefore, the Court, upon the authority of *In re Torok*, 161 Ohio St., 585, 120 N. E. (2d), 307, 53 Ohio Opinions, 433, grants the oral motion of counsel for the mother that the child be returned to her custody.